# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **JETPAY MERCHANT SERVICES, LLC, a Texas Limited Liability Company, and WLES, L.P., a Texas Limited Partnership,**<br><br>Plaintiffs,<br><br>vs.<br><br>**MERRICK BANK CORPORATION, a Utah Corporation, ROYAL GROUP SERVICES, LTD, LLC, a Michigan Limited Liability Company, and GREGORY RICHMOND,**<br><br>Defendants. | **CIVIL ACTION NO. 3:13-cv-03101**<br><br>**Jury Demanded** |

## PLAINTIFFS' ORIGINAL COMPLAINT AGAINST DEFENDANTS MERRICK BANK CORPORATION, ROYAL GROUP SERVICES, LTD, LLC, AND GREGORY RICHMOND

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COME** Plaintiffs, JetPay Merchant Services, LLC ("JetPay") and WLES, L.P. ("WLES"), and file this Complaint against Defendants, Merrick Bank Corporation ("Merrick Bank"), Royal Group Services, LTD, LLC ("Royal Group"), and Gregory Richmond ("Richmond"), and state as follows:

# I.
# PARTIES

1. JetPay is a Texas Limited Liability Company organized under the laws of the State of Texas with its principal place of business in Texas. JetPay was formerly known as Standard Payments, LLC.

2. WLES is a Texas Limited Partnership. None of its partners is a resident of the State of Utah.

3. On information and belief, Merrick Bank is a Corporation organized under the laws of the State of Utah with its principal place of business in Utah.

4. Royal Group is a Limited Liability Company duly formed and existing under the laws of the State of Michigan. The members of Royal Group are Robert Halsey and Gregory Richmond, who are citizens of the State of Michigan. Royal Group may be served with process by serving its registered agent for services, Andrew J. Broder, at 32100 Telegraph Road, Suite 200, Bingham Farms, Michigan, 48025.

5. Richmond is a citizen of the State of Michigan. Richmond may be served with process at 3886 Peabody Drive, Bloomfield Hills, Michigan, 48302.

# II.
# JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Merrick Bank because, even though it is incorporated in Utah and it regularly and continuously conducts business in and from Utah, pursuant to Section 101.051(b) (c), Merrick Bank has engaged in the business of insurance in the State of Texas.

7. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) (1) as there is complete diversity of citizenship among the parties to this suit and the

amount in controversy exceeds $75,000.00, exclusive of interests and costs. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim alleged herein occurred in this District and Plaintiffs reside in this Judicial District. Defendants entered into an agreement with Plaintiffs to provide and/or obtain coverage for chargebacks. Said agreement was entered into in the State of Texas.

### III.
### FACTUAL BACKGROUND

8. Historically, credit card processing services were provided by banks that were members of the Visa or MasterCard networks. Typically, banks both issued credit cards and helped merchants process them.

9. Over time, the industry consolidated and, today, very few banks actually process credit cards. Banks typically outsource the selling of credit card processing services to small companies called Independent Sales Organizations ("ISO").

10. Today, the majority of merchants obtain their credit card processing services from an ISO, which is responsible for selling the service to the merchant, providing technical support, arranging for the processing of the transactions (authorizing it and submitting it to the Visa or MasterCard network), and setting the price of the services. Small ISOs often outsource some of those services (for example, providing technical support and processing the transactions) to larger ISOs and third party processors.

11. JetPay is an ISO that provides services to its merchant clients. These services include establishing merchant accounts with clearing banks, processing credit card transactions, and reporting on account activity.

12. An "acquiring bank" or a "clearing bank" is a bank that has a relationship with Visa, MasterCard or other credit card company(s) as well as the merchant's bank. It is the bank

through which credit/debit card transactions are cleared. The clearing bank is responsible for clearing transactions between the time they are charged to a cardholder and the time they are deposited into the merchant's bank account. The clearing bank is the banking entity that actually makes the deposits into a bank account when credit cards are processed.

13. In October of 2003, JetPay (through its predecessor in interest, Standard Payments, LLC) entered into a Merchant ISO Agreement with Merrick Bank.

14. Pursuant to that agreement, Merrick Bank provided services as one of JetPay's clearing banks for JetPay's merchant clients.

15. Independent of its Merchant ISO Agreement, JetPay purchased insurance from or through Merrick Bank to protect JetPay from any losses as a result of chargebacks on specific accounts that JetPay established with Merrick Bank.

16. A chargeback results when the merchant defaults in providing the goods or services for which payment has been made.

17. Merrick Bank provided coverage to or, in the alternative, offered to act as an agent for JetPay to procure insurance. Thus, Merrick Bank is an "agent" as that term is defined by Section 4001.003 of the TEXAS INSURANCE CODE. During the course of the business relationship with Merrick Bank, JetPay paid for, and Defendants accepted, payments from JetPay for insurance. In other words, JetPay paid premiums to Merrick Bank for coverage of the merchant accounts.

18. Merrick Bank engaged the services of Richmond, an insurance agent in Michigan, to assist it in providing the coverage. Richmond served as subagent of Merrick Bank as that termed is defined in Section 4001.003(9) of the TEXAS INSURANCE CODE.

19. Upon information and belief, Merrick Bank and Richmond attempted to place coverage on the accounts with Chartis Specialty Insurance Company ("Chartis"). Merrick Bank and Richmond told JetPay that the coverage had been placed with Chartis and that the coverage requested and paid for by JetPay was in effect. Merrick Bank and Richmond told JetPay that the Chartis policy would provide the coverage sought by JetPay and protect JetPay in the event of any merchant chargebacks on the accounts.

20. At the time the Chartis policy was obtained, Richmond was not a licensed Surplus Lines insurance agent in Utah. At the time the Chartis policy was obtained for JetPay, Merrick Bank was not a licensed Surplus Lines agent in Utah. At the time the Chartis policy was obtained for JetPay, Richmond was not a licensed Surplus Lines agent in Texas. At the time the Chartis policy was obtained for JetPay, Merrick Bank was not a licensed Surplus Lines agent in Texas.

21. Merrick Bank charged and received commissions/premiums paid by JetPay for the placement of insurance coverage. As a result of the allegations above, both Merrick Bank and Richmond owe JetPay the duties owed by an agent. Upon information and belief, the premiums charged to JetPay exceeded those charged by Chartis and were charged after the ending date of the Chartis policy.

22. Under Section 981.004(2) of the TEXAS INSURANCE CODE, a surplus lines policy may only be issued in Texas if the coverage is placed through a surplus lines agent licensed in Texas. Under Section 31A-15-103(3)(b) of the UTAH INSURANCE CODE, a surplus lines policy may only be issued in Utah if placed through a surplus lines agent licensed in Utah. At the time the Chartis policy was obtained by Merrick Bank and Richmond, neither Merrick Bank nor Richmond were licensed surplus lines agents in the State of Texas or the State of Utah.

23. Because neither Merrick Bank nor Richmond were licensed surplus lines agents at the time the Chartis policy was issued, the policy constitutes unauthorized insurance as defined by Section 101.053 of the TEXAS INSURANCE CODE and Section 31A-15-103 of the UTAH INSURANCE CODE.

24. JetPay timely paid all premiums required by Merrick Bank and it has fulfilled all conditions precedent.

25. Merrick Bank's actions constitute the actions of an insurance agent because Merrick Bank solicited, negotiated, procured, and/or collected a premium on an insurance or annuity contract for the benefit of Plaintiffs.

26. Merrick Bank and Richmond have violated Sections 981.202, 981.213, 981.101, 981.103 and 981.105 of the TEXAS INSURANCE CODE.

27. Merrick Bank and Richmond have violated Sections 31A-15-103 (8) (a) (ii) (A), (c), and (9) (a) of the UTAH INSURANCE CODE.

28. Merrick Bank has engaged in the business of insurance as that term is defined by Section 101.051 of the TEXAS INSURANCE CODE. Merrick Bank is a "person" as that term is defined by Section 101.101 of the TEXAS INSURANCE CODE. Merrick Bank has engaged in the unauthorized business of insurance as that term is defined by Section 101.102 of the TEXAS INSURANCE CODE. Under Section 101.201, Merrick Bank is a person who has assisted directly or indirectly in the procurement of an unauthorized policy of insurance in the State of Texas and is liable for the full amount of the loss sustained by Plaintiffs.

29. Merrick Bank has assisted an unauthorized insurer as that term is defined by Section 31A-15-102 of the UTAH INSURANCE CODE. As a result of Merrick Bank assisting Richmond and Chartis in the placement of unauthorized insurance, and the failure of Chartis to

pay the claim, Merrick Bank is liable to JetPay for the full amount of the claim under Section 31A-15-105 of the UTAH STATUTES.

30. In 2006, JetPay entered into a Merchant Agreement with Southern Sky Air Tours, d/b/a Direct Air ("Direct Air"), a charter airline based in South Carolina, for the purpose of providing Direct Air with credit card processing services. Merrick Bank represented to JetPay that Direct Air was a covered merchant.

31. During, or about March of 2012, Direct Air abruptly ceased operations, resulting in approximately $25 Million Dollars in merchant chargebacks on tickets purchased by Direct Air customers for future travel. Chapter 7 liquidation of Direct Air commenced in or about April of 2012. Merrick Bank has refused to cover the loss.

32. In December of 2012, Merrick Bank forced JetPay and WLES to enter into a document known as the Escrow Agreement. The Escrow Agreement provided in part that JetPay and WLES were required to place monies in escrow pending the resolution of the Direct Air issue. These monies are being withheld despite the fact that Merrick Bank agreed to provide coverage for chargeback losses to JetPay. JetPay and WLES were forced to enter into this Escrow Agreement by duress.

## IV.
## FIRST CAUSE OF ACTION – SECTION 101.201

33. Plaintiffs repeat and re-allege the foregoing paragraphs, as if fully set forth herein.

34. Section 101.201 of the TEXAS INSURANCE CODE provides:

Sec. 101.201. VALIDITY OF INSURANCE CONTRACTS. (a) An insurance contract effective in this state and entered into by an unauthorized insurer is unenforceable by the insurer. *A person who in any manner assisted directly or indirectly in the procurement of the contract is liable to the insured for the full amount of a claim or loss under the terms of the contract if the unauthorized insurer fails to pay the claim or loss.*

Merrick Bank is a person who has assisted directly or indirectly in the procurement of unauthorized insurance. As a result, Merrick Bank is liable to JetPay for the Direct Air loss.

## V.
## SECOND CAUSE OF ACTION – SECTION 31A-15-105 UTAH INSURANCE CODE

35. Section 31A-15-105 (3) of the UTAH STATUTES provides that: "Any person who assisted in the procurement of an illegal contract under this chapter, and who knew, or should have known, that the transaction was illegal, is liable to the insured for the full amount of a claim of loss payable under the contract, if the insurer does not pay it."

Merrick Bank is a "person" who has assisted in the procurement of an illegal contract and who knew, or should have known, that the contract was illegal and is liable to JetPay for the full amount of the Direct Air claim up to the limits of liability of $25 Million Dollars.

## VI.
## THIRD CAUSE OF ACTION – NEGLIGENCE

36. Plaintiffs repeat and re-allege the paragraphs above, as if fully set forth herein. Merrick Bank agreed to procure insurance for JetPay that would cover chargeback losses for transactions processed by JetPay through Merrick Bank. Merrick Bank charged and was paid a commission for performing these services.

37. Merrick Bank is liable to JetPay for breaches of its duties as an agent.

## VII.
## FOURTH CAUSE OF ACTION – FRAUD

38. Plaintiffs repeat and re-allege the paragraphs above, as if fully set forth herein.

39. In the alternative, Merrick Bank informed JetPay that it was procuring insurance that would provide coverage to JetPay in the event of a chargeback loss from a transaction being processed through Merrick Bank. These representations were material and were relied upon by JetPay. Despite these representations, Merrick Bank took JetPay's premiums and purchased a

policy that listed Merrick Bank as the insured. Such conduct is contrary to the representations made by Merrick Bank to JetPay and constitutes actual or constructive fraud on the part of Merrick Bank.

40. JetPay is entitled to recover its damages based upon the actual or constructive fraud of Merrick Bank.

## VIII.
## FIFTH CAUSE OF ACTION - BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

41. Plaintiffs repeat and re-allege the paragraphs above, as if fully set forth herein.

42. Merrick Bank owed JetPay a duty of good faith and fair dealing in connection with agreements between Merrick Bank and JetPay to obtain the Policies, include JetPay as an insured, and to properly handle the premium payments made by JetPay to Merrick Bank for the Policies.

43. As a consequence of Merrick Bank's conduct described herein, Merrick Bank has breached this implied covenant.

44. As a result of Merrick Bank's breaches, JetPay is entitled to recover an amount to be proven at trial.

## IX.
## SIXTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION

45. Plaintiffs repeat and re-allege the paragraphs above, as if fully set forth herein.

46. At various times throughout the relationship with Plaintiffs, Defendants made express and/or implied representations to Plaintiffs regarding the coverage for chargeback losses. These representations were false and/or misleading when they were made, and Defendants knew, or reasonably should have known, that they were false and/or misleading.

47. Merrick Bank and its officer and/or directors did not exercise reasonable care or competence in obtaining or communicating the information regarding the Policies, the premiums, and JetPay's coverage.

48. As a result of these negligent misrepresentations, JetPay is entitled to recover the amount of its damages.

## X.
## SEVENTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

49. Plaintiffs repeat and re-allege the paragraphs above, as if fully set forth herein.

50. Merrick Bank accepted premiums for chargeback coverage and Merrick Bank knew that JetPay was relying upon and trusted Merrick Bank to properly provide coverage for chargebacks.

51. As set forth hereinabove, Merrick Bank violated its duties to JetPay.

52. As a result of Merrick Bank's breach of its fiduciary duty to JetPay, JetPay has been damaged in an amount to be proven at trial.

## XI.
## EIGHTH CAUSE OF ACTION – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING, ESCROW AGREEMENT

53. Plaintiffs repeat and re-allege the paragraphs above, as if fully set forth herein.

54. The Escrow Agreement contains an implied covenant of good faith and fair dealing.

55. Merrick Bank owes JetPay and WLES a duty of good faith and fair dealing that was breached by the conduct alleged hereinabove; specifically, Merrick Bank's conduct that has resulted in the continuing potential liabilities and costs arising from the Direct Air chargeback.

56. As a result of Merrick Bank's breaches, WLES is entitled to a declaration of the Court that all conditions precedent to the delivery of the Escrowed Shares and other amounts of the escrowed funds, as set forth in the Escrow Agreement, have been met and that Merrick Bank and WLES shall issue a joint written notice to the escrow agent that "all amounts in the Fund and all certificate(s) representing the Escrowed Shares" shall be delivered forthwith to WLES, pursuant to paragraph 4(e) of the Escrow Agreement.

## XII.
## NINTH CAUSE OF ACTION
## BREACH OF CONTRACT - MERRICK

57. Independent of the ISO agreement, Merrick accepted premiums on a monthly basis from JetPay for the purchase of insurance and coverage of chargebacks. All conditions precedent have thus been performed.

58. Defendant has refused to honor the terms of the contract and has caused Plaintiff's injury in an amount to be proven at trial.

## XIII.
## PRAYER FOR RELIEF

WHEREFORE, JetPay respectfully prays for judgment as follows:

a. For Plaintiffs and against Defendants in the amount of the actual damages;

b. For Plaintiffs and against Defendants for exemplary damages;

c. For Plaintiffs and against Defendants for the reasonable and necessary attorneys' fees, expenses and court costs;

d. For an Order of the Court that all conditions precedent to the delivery of the Escrowed Shares and other amounts of the escrowed funds, as set forth in the Escrow Agreement, have been met and that Merrick Bank and WLES shall issue a joint written notice to

the escrow agent that all amounts in the Fund and all certificate(s) representing the Escrowed Shares shall be delivered forthwith to WLES, pursuant to paragraph 4(e) of the Escrow Agreement; and

e. For such other and further relief, at law and in equity, to which Plaintiffs may show themselves justly entitled.

### XIV.
### JURY DEMAND

Plaintiffs respectfully demand a jury.

Respectfully submitted,

By: *Timothy M. Dortch*

R. BRENT COOPER
State Bar No. 04783250
Email: brent.cooper@cooperscully.com
TIMOTHY MICAH DORTCH
State Bar No. 24044981
Email: micah.dortch@cooperscully.com

**COOPER & SCULLY, P.C.**
900 Jackson Street, Suite 100
Dallas, Texas 75202

Telephone: (214) 712-9500
Fax: (214) 712-9540

ATTORNEYS FOR PLAINTIFFS, JETPAY MERCHANT SERVICES, LLC, a Texas Limited Liability Company, and WLES, L.P., a Texas Limited Partnership