IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JETPAY MERCHANT SERVICES, LLC and WLES, L.P., § § § | | |
| Plaintiffs, § § | | |
| V. § | No. 3:13-cv-3101-L-BN | |
| § | | |
| MERRICK BANK CORPORATION, § § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND TRANSFER ORDER

Defendant Merrick Bank Corporation has filed a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 [Dkt. No. 28], which has been referred to the undersigned United States magistrate judge for determination pursuant to 28 U.S.C. § 636(b) and an order of reference [Dkt. No. 34]. Plaintiffs JetPay Merchant Services, LLC and WLES, L.P. filed a response, *see* Dkt. No. 36, and Defendant filed a reply, *see* Dkt. No. 37. For the reasons set forth herein, Defendant's Motion to Transfer Venue is GRANTED.

## Background

Plaintiff JetPay Merchant Services, LLC, ("JetPay") is an independent sales organization ("ISO") that sells credit card processing services to merchants and provides technical support related to credit card transactions. Defendant is a clearing bank that clears credit card transactions. JetPay (or related JetPay entities) and Defendant entered two Merchant ISO Agreements (alternatively, the "agreements"),

one in 2003 and one in 2007. Both agreements contain identical forum selection clauses providing that each of the parties "irrevocably submits to the exclusive jurisdiction of any Utah state or federal court sitting in Salt Lake County in any action or proceeding arising out of or relating to" the agreements. *See* Dkt. No. 28-3 at 21 ¶ 14.8, 63 ¶ 13.8.

JetPay alleges that it entered a subsequent, independent agreement to purchase insurance from or through Defendant to protect it from any losses as a result of uncollectible chargebacks that could not be recouped from the merchant on any of the accounts that JetPay established with Defendant. Defendant allegedly failed to procure insurance to protect Plaintiff from such chargebacks and subsequently refused to cover $25 million in losses suffered by JetPay as a result of chargebacks stemming from merchant Direct Air's bankruptcy.

Both Plaintiffs sued Defendant in the United States District Court for the Northern District of Texas, Dallas Division, alleging the following claims: (1) violation of Section 101.201 of the Texas Insurance Code; (2) negligence; (3) fraud; (4) breach of duty of good faith and fair dealing; (5) negligent misrepresentation; (6) breach of fiduciary duty; (7) breach of good faith and fair dealing concerning an escrow agreement; and (8) breach of contract. *See* Dkt. No. 18.

Defendant filed its Motion to Transfer Venue, contending that this lawsuit arises out of or relates to the Merchant ISO Agreements and that it should be transferred to the District Court for the District of Utah, Central Division, pursuant to the forum selection clause. *See* Dkt. No. 28; *see also* Dkt. No. 37.

In their response, Plaintiffs do not challenge the validity or enforceability of the

forum selection clause. Instead, Plaintiffs respond that this is an insurance coverage dispute, which does not arise out of or relate to the agreements, and that the forum selection clause in the agreements therefore does not apply. Plaintiffs argue, in the alternative, that the forum selection clause should not be enforced because public interests demand that Plaintiffs' claims brought under the Texas Insurance Code be litigated in Texas. *See* Dkt. No. 36.

## Legal Standards

A forum selection clause may be enforced by a motion to transfer venue under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to which all parties have consented." *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the Western Dist. of Texas*, 134 S. Ct. 568, 574, 579 (2013). A valid forum selection clause is "'given controlling weight in all but the most exceptional cases,'" and, when the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. *Id.* at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp*, 487 U.S. 22, 33 (1988)).

In *Atlantic Marine*, the Supreme Court held that "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.*

"First, the plaintiff's choice of forum merits no weight," because "the plaintiff has effectively exercised its 'venue privilege' before the dispute arises" through the forum

selection clause agreement. *Id.* at 581-82.

Second, "arguments about the parties' private interests" must not be considered, since, by agreeing to the forum selection clause, the parties effectively "waive the right to challenge" any private inconvenience that the "preselected forum" may create. *Id.* at 582. Accordingly, the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum," and only "arguments about public-interest factors" may be considered when deciding whether to transfer under § 1404(a) to the contractually-specified venue. *Id.* But "those factors will rarely defeat a transfer motion," with "the practical result is that forum-selection clauses should control except in unusual cases." *Id.* And "the party acting in violation of the forum-selection clause ... must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 583.

The third adjustment is that "a § 1404(a) transfer of venue will not carry with it the original venue's choice of law rules – a factor that in some circumstances may affect public-interest considerations." *Id.* at 582. In conclusion, the Court summarized that "the party acting in violation of the forum-selection clause ... must bear the burden of showing that public-interest factors overwhelmingly disfavor transfer." *Id.* at 583; *see also Cline v. Carnival Corp.*, No. 3:13-cv-1090-B, 2014 WL 550738, at *6 (N.D. Tex. Feb. 12, 2014) (discussing *Atlantic Marine*).

**Analysis**

I.  <u>This lawsuit falls within the scope of the forum selection clause.</u>

   A.  *The claims in this lawsuit arise out of or relate to the agreements.*

Plaintiffs first argue that the forum selection clause in the Merchant ISO agreements does not apply to the insurance-related claims brought in this lawsuit. In determining whether the forum selection clause applies, the Court will assume not only that "[f]ederal law governs the determination of whether an enforceable forum selection clause exists," *Aerus LLC v. Pro Team, Inc.*, No. Civ.A. 3:04-cv-1985-M, 2005 WL 1131093, at *1 (N.D. Tex. May 9, 2005) (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997)), but that federal law also controls whether Plaintiffs' lawsuit falls within the scope of the forum selection clause, *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000). The court must examine the language of the contract to determine which causes of action are governed by the forum selection clause. *See Aerus LLC*, 2005 WL 1131093, at *7 (citing *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998)); *Soil Bldg. Sys. v. CMI Terex Corp.*, No. 3:04-cv-210-G, 2004 WL 1283966, at *5 (N.D. Tex. June 9, 2004)). The scope of a forum selection clause is not limited solely to claims for breach of the contract that contains it. *See MaxEn Capital, LLC v. Sutherland*, No. H-08-3590, 2009 WL 936895, at *6 (S.D. Tex. Apr. 3, 2009) (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)). Whether a forum selection clause encompasses other claims depends principally on how broadly the clause is worded. *See id.*

Here, the forum selection clause applies to disputes "arising out of or relating

to" the Merchant ISO Agreements. Forum selection clauses that cover disputes "arising from" an agreement are viewed as relatively narrow. *See id.* By contrast, forum selection clauses covering claims "relating to" an agreement are broad in scope. *See id.* ("Such clauses are broad, encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to' the contract." (internal quotation marks, citation, and ellipsis omitted)); *Smith v. Lucent Techs., Inc.*, No. Civ.A. 02-481, 2004 WL 515769, at *8 (E.D. La. Mar. 16, 2004). Because the clause in this case includes both "arising from" and "relating to" language, the Court will construe it broadly. *See Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (construing similar clause broadly).

The Court must also look to the operative facts underlying the alleged causes of action: "If the substance of the plaintiff's claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply." *Aerus LLC,* 2005 WL 1131093, at *7 (citations, emphasis, and brackets omitted); *see also Soil Bldg. Sys.*, 2004 WL 1283966, at *4. "Claims that arise out of the contractual relationship and implicate the agreement are subject to the forum selection clause." *Aerus LLC*, 2005 WL 1131093, at *7 (quoting *Kessmann & Assoc., Inc. v. Barton-Aschman Assoc.,* 10 F. Supp. 2d 682, 688 (S.D. Tex. 1997)). When the plaintiff raises tort claims, the applicability of a contractual forum selection clause to those claims "depends on whether resolution of the claims relates to interpretation of the contract." *Pinnacle Interior Elements, Ltd. v. Panalpina, Inc.*, No. 3:09-cv-430-G, 2010 WL 445927, at *5 (citing *Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 754 (S.D. Tex. 2002).

Defendant argues that this lawsuit both "arises out of" and "relates to" the Merchant ISO Agreements because Plaintiffs' alleged actual damages would not have occurred but for those agreements, *see* Dkt. No. 28 at 16-17, and because the factual basis underlying all of Plaintiffs' claims would not exist but for the relationship created by the agreements, *see* Dkt. No. 37 at 5-6. According to Defendant, the essence of Plaintiffs' claims are that Defendant failed to follow through on an alleged promise to purchase insurance to cover JetPay's exposure to uncollectible chargebacks arising from transactions processed pursuant to the agreements, and the only reason JetPay needed the insurance is that JetPay agreed to be responsible for the chargebacks in the agreements. *See id.* Defendant asserts that those claims are intertwined with, and exist solely because of, the Merchant ISO Agreements. *See* Dkt. No. 28 at 18.

Defendant also asserts that Plaintiffs have admitted in other litigation that claims based on the alleged failure to provide merchant chargeback insurance are within the scope of the forum selection clause. *See id.* at 11-12, 17. In 2011, JetPay filed a similar lawsuit against Defendant and others in Michigan state court raising claims of failure to comply with an agreement to provide merchant chargeback insurance after JetPay suffered over $4 million in chargeback losses as the result of the bankruptcy of a different merchant. *See* Dkt. No. 28-1, App. 136-52. In the complaint, JetPay alleged that, "in connection with" the Merchant ISO Agreement, Defendant agreed to obtain merchant chargeback insurance to cover JetPay for such losses. *Id.,* App. 141 ¶ 22. The Michigan court dismissed the lawsuit because the claims "all arise out of or, at a minimum, are related to" the Merchant ISO Agreement, which provided for

exclusive jurisdiction in Utah. *Id.*, App. 153, 167.

In 2013, both Plaintiffs and other JetPay entities filed suit against Defendant for numerous claims, including those raised in the Michigan lawsuit, in the United States District Court for the District of Utah. Plaintiffs asserted that "[v]enue is also mandated under the agreements pursuant to which certain of the causes of action arise." *Id.*, App. 85 ¶ 6. Plaintiffs also alleged that JetPay and Defendant entered the 2003 Merchant ISO Agreement and that, "[i]n connection with this business relationship," Defendant agreed to purchase merchant chargeback insurance to cover JetPay from such losses. *Id.*, App. 87 ¶¶ 12-15.

Plaintiffs argue that this lawsuit does not "arise out of" or "relate to" the Merchant ISO Agreements because the agreements have nothing to do with insurance coverage and make no mention of insurance and because none of the claims asserted in this lawsuit require any reference to the agreements in order to resolve the insurance coverage dispute. *See* Dkt. No. 36 at 2-5. Plaintiffs characterize their claims in this lawsuit as: (1) violations of the Texas Insurance Code for unauthorized insurance; (2) negligence for failing to procure insurance; (3) fraudulently representing that the policy purchased with Plaintiff's premiums covered Plaintiffs as an insured; (4) breaches of the duty of good faith and fair dealing of an insurance agent; (5) negligently misrepresenting that it was providing insurance to Plaintiffs; (6) breaching its fiduciary duty to Plaintiffs in failing to provide the insurance promised; and (7) breaching the contractual agreement to provide insurance. *See id.* at 3.

Construing the forum selection clause broadly, the undersigned concludes that

the claims raised in this lawsuit arise out of or relate to the Merchant ISO Agreements. The determination of who bears the responsibility for losses sustained as a result of uncollected merchant chargebacks requires reference to both the Merchant ISO Agreements and the alleged agreement to provide insurance coverage, and the issues raised in this lawsuit grow out of the Merchant ISO Agreements and have some possible connection to those agreements. Consequently, this lawsuit falls within the scope of the forum selection clause.

### B. *Plaintiff WLES, L.P. is bound by the forum selection clause.*

Plaintiff WLES, L.P. is not a signatory to either Merchant ISO agreement, but Defendant argues that WLES is bound by the forum-selection clauses in those agreements because it is inextricably intertwined with a signatory to those agreements. *See* Dkt. No. 28 at 18 n.59; Dkt. No. 37 at 2 n.1; Dkt. No. 37 at 11-13.

The 2003 Merchant ISO Agreement was entered into by Defendant and Standard Payments, LLC. *See* Dkt. No. 28-3 at App.6-26. Standard Payments, LLC is a predecessor to Plaintiff JetPay. *See* Dkt. No. 18 at 4 ¶ 14 (Amended Complaint). Plaintiffs allege that the relationship between Plaintiff JetPay and Defendant arises from the 2003 Merchant ISO Agreement. *See id.* at ¶ 15. Defendant contends that the 2007 agreement governs the services related to merchant Direct Air. *See* Dkt. Nos. 28 at 8, 28-2 at App. 3 ¶ 7. The 2007 Merchant ISO Agreement was entered into by Defendant and JetPay IOS Services, LLC. *See* Dkt. No. 28-4 at App. 44-64. Plaintiff WLES, L.P. is a holding company that owns part of JetPay, LLC, which, in turn, owns Defendant JetPay and JetPay IOS Services, LLC. *See* Dkt. No. 28-10 at App. 171-72.

Courts have ruled that "a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses." *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 n. 5 (9th Cir. 1988); *Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234, 237 (S.D. Tex. 1997). Although WLES is not a signatory to the agreements, its relationship with the JetPay is so inextricably intertwined that it should be subject to the forum-selection clause, *see Texas Source Group*, 967 F. Supp at 237, because, to the extent that WLES suffered damages from the Direct Air chargebacks, those damages would be derivative of either JetPay or Jet Pay IOS Services, LLC's damages.

II.     <u>Public interest factors do not weigh in favor of keeping the case in Texas.</u>

Plaintiffs argue, in the alternative, that if the Court finds the claims brought in this lawsuit arise out of or relate to the Merchant ISO Agreements, the Court should nevertheless deny the motion to transfer venue because public interest demands that the insurance coverage issues raised in this lawsuit be litigated in Texas. Public interest factors that the Court may consider include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine*, 134 S. Ct. at 581 n.6, 582 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The Supreme Court has instructed that, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" and that "[o]nly under extraordinary

circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atlantic Marine*, 134 S. Ct. at 581.

Plaintiff argues that all of the public interest factors weigh against transfer of venue. But, Plaintiffs "must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 583. And they do not meet that burden.

First, Plaintiffs admit that the median time interval from case filing to disposition in the Northern District of Texas and the District of Utah are basically the same. But Plaintiffs assert that, because they would contest any motion by Defendant to consolidate this case with the case currently pending in Utah, the factor of administrative difficulties flowing from court congestion weighs in the favor of denying the motion to transfer venue. But, regardless of whether Defendant would seek to consolidate the cases in Utah or Plaintiffs would contest such consolidation, transfer of venue is appropriate when the issues in a case are substantially related to another case pending in the transferee court. *See Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528-29 (5th Cir. 1988). And Plaintiff's argument does not show that this factor weighs in favor of denying transfer – as Plaintiffs need it to do and to do so "overwhelmingly," *Atlantic Marine*, 134 S. Ct. at 583. If this case remains in this Court, it will not be consolidated with the case currently pending in Utah, just as Plaintiffs assert that it should not be consolidated if this case is transferred to the United States District Court of the District of Utah.

Next, Plaintiffs argue that, because they claim Defendant engaged in the unauthorized business of insurance in Texas, in violation of the Texas Insurance Code,

Texas has an interest in the case being decided in Texas, under Texas law, by a court familiar with Texas law. Defendant responds that only one of Plaintiff's eight claims is brought under the Texas Insurance Code and that that claim is subject to dismissal on its face because it may only be enforced by an insured and the gravamen of Plaintiffs' complaint is that Plaintiffs were not insureds as a result of Defendant's failure to obtain merchant chargeback insurance pursuant to an independent agreement to do so. *See* Dkt. No. 37 at 10; TEX. INS. CODE ANN. § 101.201(a). But consideration of dismissal of the Texas Insurance Code claim is premature and not properly raised on this motion.

Defendants also respond that the Merchant ISO agreements contain choice-of-law provisions mandating that the agreements and "all rights and obligations" under the agreements "shall be governed by and construed in accordance with the laws of the State of Utah." *See* Dkt. No. 28-3 at App. 25 ¶ 14.7; App. 63 ¶ 13.7. Under *Atlantic Marine*, when a case is transferred to a different venue based on a forum selection clause, the original venue's choice-of-law rules do not follow the case, *see* 134 S. Ct. at 582, which, in this case, is in harmony with the choice-of-law provisions in the agreements. While the Court is sensitive to the potential discrepancies between Texas and Utah law and the possibility of conflicting opinions from Texas and Utah courts construing the Texas Insurance Code, in consideration of the forum selection clause, the undersigned does not find those potential legal considerations to be so exceptional as to make transfer of venue unwarranted.

That is, the undersigned does not find that Plaintiffs have met their burden of

showing that public-interest factors overwhelmingly disfavor transfer. *See id.* at 583. Because this is not one of those "most unusual cases" in which the public interest overwhelmingly disfavors transfer, the Court finds that "'the interest of justice,'" as defined in Section 1404(a), "is served by holding [Plaintiffs] to their bargain" via a transfer to the parties' agreed-upon forum. *Id.*; *accord Cline*, 2014 WL 550738, at *7.

## Conclusion

Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 is GRANTED, and this case is transferred to the District Court for the District of Utah, Central Division, for further proceedings.

DATED: February 28, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE